IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02400-MSK-KMT

ELLERY EMERT, and
CRISTY EMERT,

      Plaintiffs,

v.

SGT. JOSH WARNER, Dep Sheriff #123,
ANITA C. ABEYTA, Dep Sheriff #138,
JEREMY CADE ARNOLD,
CRYSTAL JOHNSON,
BROOKE PACE, Dep. Sheriff #131, and
UNKNOWN MEMBERS OF SWAT TEAM OF MESA COUNTY SHERIFF'S DEPT.,

      Defendants.

---

## OPINION AND ORDER GRANTING MOTION TO DISMISS

---

**THIS MATTER** comes before the Court pursuant to Defendants Warner, Abeyta, and

Pace's ("the MCSD Defendants") Motion to Dismiss **(# 39)**, the Plaintiffs' response **(# 55)**, and

the MCSD Defendants' reply **(# 62)**; and the MCSD Defendants' Motion To Refer **(# 47)** the

Motion to Dismiss to the Magistrate Judge for Recommendation, and the Plaintiffs' response

**(#54)**.[1]

      According to the *pro se* Amended Complaint **(# 14)**, in or about May 2007, Defendants

Arnold and Johnson contacted the Mesa County Sheriff's Department to report that Plaintiff

Ellery Emert had stolen Ms. Johnson's car and "wired" it to explode, and that when Mr. Arnold

went to confront Mr. Emert about a debt, Mr. Emert threatened Mr. Arnold and Ms. Johnson

---

[1]Because the Court resolves the Motion to Dismiss in this Order, the MCSD Defendants'
Motion to Refer that motion to the Magistrate Judge for a recommendation is denied as moot.

with a weapon. The Plaintiffs state that, during the course of the MCSD Defendants' investigation into the accusations, Mr. Arnold and Ms. Johnson admitted that, in fact, Mr. Arnold had impersonated a police officer to steal the car in question from a third party, drove the car to the Plaintiffs home, and argued with the Plaintiffs about money the Plaintiffs owed Ms. Johnson. The Plaintiffs allege that the MCSD Defendants did not go to the Plaintiffs' house to ascertain whether the car was, in fact, stolen or wired to explode. Rather, the Plaintiffs contend that the MCSD Defendants intentionally conspired with Mr. Arnold and Ms. Johnson to use the false allegations against the Plaintiffs to obtain a warrant, "blow the doors off the house, kill the family dog inside the home, assault the [Plaintiffs'] 13-year old daughter, search for drugs and anything else they wanted to, and arrest the [Plaintiffs] on a mountain of felony charges." Based on these facts, the Plaintiffs allege claims arising under 42 U.S.C. § 1983 and 1985, sounding in a violation of the 4th, 6th, and 14th Amendments to the United States Constitution.

The MCSD Defendants – namely, the Mesa County Sheriff's Department deputies involved in obtaining the warrant and executing the search – move to dismiss **(# 39)** the claims against them, arguing: (i) the Plaintiffs fail to state a claim for violation of the 4th Amendment because the search was pursuant to a warrant and thus, presumptively reasonable and because the warrant application expressly advised the issuing judge of doubts about Mr. Arnold and Ms. Johnson's credibility; (ii) the MCSD Defendants' actions were not the proximate cause of any injury to the Plaintiffs because the warrant application was independently reviewed and approved by both the District Attorney and the issuing judge; (iii) the Plaintiffs fail to allege any facts to indicate that the scope of the search exceeded that permitted by the warrant; (iv) the 6th and 14th Amendments do not provide rights that are implicated by the facts presented here; (v)

the Plaintiffs fail to allege facts sufficient to plead a conspiracy among the Defendants; (vi) the

Plaintiffs fail to allege any personal participation by Defendant Pace in any of the acts alleged in

the Amended Complaint; (vii) Mr. Emert's claims implicate the validity of his conviction, and

are thus barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

The Plaintiffs did not file a timely response to the motion under D.C. Colo. L. Civ. R.

7.1(C). On October 2, 2008, nearly four months after the MCSD Defendants filed their motion

and promptly after a Status Conference before the Magistrate Judge, the Plaintiffs filed a

response **(# 55)** to the MCSD Defendants' motion. The Plaintiffs' response consists solely of an

assertion that denial of the motion was appropriate, and contains no substantive argument.

In considering the Plaintiffs' filings, the Court is mindful of their *pro se* status, and

accordingly, reads their pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

However, such liberal construction is intended merely to overlook technical formatting errors

and other defects in the Plaintiffs' use of legal terminology and proper English. *Hall v. Bellmon*,

935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve the Plaintiffs of the duty to

comply with the various rules and procedures governing litigants and counsel or the

requirements of the substantive law, and in these regards, the Court will treat the Plaintiffs

according to the same standard as counsel licensed to practice law before the bar of this Court.

*See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455

(10th Cir. 1994).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all

well-plead allegations in the Complaint as true and view those allegations in the light most

favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d

1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

Reduced to its essence, the Amended Complaint purports to allege that the MCSD Defendants violated the Plaintiffs' 4th Amendment rights in two respects: (i) by obtaining a warrant based on allegations known to be dubious or false; and (ii) by exercising that warrant in an abusive way. The Court will consider these two claims in turn.

As to the claim premised on the MCSD Defendants using false or inaccurate information to obtain the warrant, a police officer violates the 4th Amendment if he or she knowingly or recklessly "include[s] false statements in the affidavit" seeking the warrant or omits information from the affidavit which, if included, would have vitiated a finding of probable cause. *Bruner v. Baker*, 506 F.3d 1021, 1026 (10th Cir. 2007). The Amended Complaint appears to allege that the MCSD Defendants failed to include the following facts in the warrant application: (i) that they had not gone to the Plaintiffs' house to determine whether Ms. Johnson's vehicle was actually

there; (ii) that they had not spoken with the Plaintiffs to obtain their side of the story; (iii) that Mr. Arnold had admitted to impersonating a police officer and stealing the vehicle in question; (iv) that Ms. Johnson admitted she had not seen any guns or heard any threats during the encounter between Mr. Arnold and Mr. Emert; (v) no witness had reported seeing the car at the Plaintiffs' residence; and (vi) that the MCSD Defendants knew that the car in question was not at the Plaintiffs' residence, that Mr. Emert had not stolen the car, that Mr. Emert had not wired the car with explosives, that Mr. Emert did not threaten Mr. Arnold and Ms. Johnson, and that, in general, the MCSD Defendants did not believe Mr. Arnold and Ms. Johnson's allegations to be true. The MCSD Defendants have attached a copy of the warrant affidavit to their motion. This affidavit is implicitly referred to in the allegations of the Amended Complaint, is central to the Plaintiffs' claims, and the Plaintiffs have not disputed the authenticity of the affidavit tendered by the MCSD Defendants. Accordingly, the Court considers the contents of the affidavit in evaluating the sufficiency of the claims in the Amended Complaint. *Jacobsen*, 287 F.3d at 941.

Review of the warrant affidavit reveals that essentially all of the material the Plaintiffs allege was omitted was, in fact, included. Greatly summarized, the warrant states:

> • Ms. Johnson had told police that on May 27, 2007, Mr. Emert and another individual came to her house and took her car. Ms. Johnson stated that she called Mr. Arnold, and the decided to go talk to Mr. Emert to address the issue. While at a gas station, Ms. Johnson saw someone driving what appeared to be her car. Ms. Johnson demanded that the driver surrender the car and the driver refused. Mr. Arnold then identified himself to the driver as a Grand Junction Police Officer and confiscated the car. Ms. Johnson and Mr. Arnold then drove to Mr. Emert's house, where Mr. Arnold met inside with Mr. Emert while Ms. Johnson waited in the car. The men came out of the house, and a man with Mr. Emert closed the driveway gates around the car, telling Ms. Johnson the car would have to be left at the house. Mr. Arnold and Ms. Johnson walked away. Mr. Arnold later returned to the house

briefly, and later reported back to Ms. Johnson that Mr. Emert had threatened to shoot them both. Mr. Johnson stated she had not seen any guns at any time.

• Mr. Arnold told police that Ms. Johnson called him, reporting that Mr. Emert had taken her car due to a drug deal that had gone badly between her and one of Mr. Emert's friends. Mr. Arnold confirmed that, at the gas station, he falsely identified himself to the driver as a police officer and confiscated the car. He stated that when they arrived at Mr. Emert's house, they went inside where Mr. Emert stated his intention to keep the car until the issue involving the drug deal was resolved. Mr. Arnold states that he attempted to persuade Mr. Emert to release the car, but Mr. Emert became angry, loaded a shotgun and a handgun, placed the handgun in Mr. Arnold's back, and directed him to leave. Mr. Arnold told police that he feared the car had been wired with explosives, but the affidavit notes that he "wouldn't elaborate as to why he thought this." Mr. Arnold and Ms. Johnson then left the area.

• Approximately one week before the events above, Defendant Warner had detained Mr. Emert on a traffic violation for driving with a suspended license. Defendant Warner confirmed that one of the terms of Mr. Warner's bail on a pending criminal charge prohibited him from possessing weapons.

• The affidavit recites several instances in 2006 in which Mr. Emert was found to be in possession of weapons, in violation of terms of his probation or pretrial release. It also recites an incident in 2006 in which Mr. Emert attempted to strike an Animal Control officer with a shovel and threatened to sic [sic] his dogs on the officer.

Based on these allegations, the affidavit requested a warrant to search the Plaintiffs' premises for Ms. Johnson's vehicle, the shotgun and handgun reported by Mr. Arnold, and papers reflecting ownership of the residence, weapons, or vehicle. The affidavit requested that the warrant permit entry "without announcing presence or purpose" – *i.e.* a "no-knock" warrant.

Having reviewed the warrant affidavit, it is apparent that the Plaintiffs' contentions are without any arguable merit. The warrant specifically acknowledges that Mr. Arnold falsely

impersonated a police officer in order to confiscate Ms. Johnson's car, that Ms. Johnson had not

seen any weapons, and that Mr. Arnold's belief that the car may have been wired with explosives

was not supported by any articulable facts.  Admittedly, the warrant affidavit does not report that

the MCSD Defendants had not spoken to the Plaintiffs or visited the area to determine whether

the car was present, but such facts can be readily inferred from the fact that no assertions to the

contrary were contained in the affidavit.  Although the Plaintiff alleges that the affidavit does not

recite the fact that the MCSD Defendants did not believe Mr. Arnold and Mr. Johnson's

allegations, a review of the affidavit does not reveal any instance in which the affiant expresses

any opinion as to their credibility; the affidavit merely reports what they told investigators.

Taken as a whole, it is apparent that the Plaintiffs were unaware of the contents of the warrant

application when they filed the Amended Complaint, and those things that the Plaintiffs allege

were omitted from the warrant affidavit are, in fact, present, either expressly or by inference.

Under these circumstances, the Court finds that the Plaintiffs could prove no set of facts

consistent with the allegations in the Amended Complaint that would entitle them to relief.

*Conley*, 355 U.S. at 45-46.  Accordingly, they fail to state a 4th Amendment claim against the

MCSD Defendants based on alleged falsehoods or omissions in the warrant application.

The second prong of the Plaintiffs' 4th Amendment claim appears to allege that the

MCSD Defendants executed the warrant in an unreasonable way.  This claim suffers from a

number of problems.  Beyond assertions that the MCSD Defendants "bl[e]w the door off the

house,"[2] "kill[ed] the family dog" and "assault[ed] the [Plaintiffs'] 13-year old daughter," the

---

[2]The fact that a "no-knock" warrant was issued essentially disposes of any claim that
damage to the Plaintiffs' door was the result of unreasonable execution of the warrant.  If one is
authorized to enter a property without knocking and obtaining voluntary admission, forcible

Amended Complaint does not specifically identify the actions by those executing the warrant that the Plaintiffs allege were unreasonable. Even assuming that the Amended Complaint can be read to allege that the killing of the Plaintiff's dog and the assault on their daughter are the particular acts giving rise to the claim, the Amended Complaint does not allege that any of the MCSD Defendants committed those acts. Indeed, at least with regard to the killing of the Plaintiffs' dog, the Amended Complaint alleges that that act was performed "by a SWAT TEAM member's 12-gauge shotgun." Without an allegation that the MCSD Defendants were members of the SWAT team[3] that actually engaged in the unreasonable acts during the warrant's execution, the MCSD Defendants are entitled to dismissal of any 4th Amendment claim predicated on such acts. *Mitchell v. Maynard,* 80 F.3d 1433, 1441 (10th Cir. 1996) ("personal participation [by each named defendant] is an essential allegation in a § 1983 claim").

Finally, the Court turns to the Plaintiffs' apparent contentions that they can state claims under the 6th and 14th Amendments. Beyond listing these amendments as sources of the Plaintiffs' claims, the Amended Complaint does not elaborate on the Plaintiffs' theories of liability under these amendments and the Plaintiffs' response to the MCSD Defendants' motion fails to clarify the issue. The 6th Amendment entitles criminal defendants to a speedy and public trial, to an impartial jury, to be informed of and to confront the witnesses against him or her, and to the assistance of counsel. It is by no means clear how any of these rights are implicated in the circumstances described in the Amended Complaint, all of which occurred prior to the filing of criminal charges against either Plaintiff. In the absence of some clarification of the grounds of

---

entry, and the attendant risk of physical damage to doors or windows, is largely inevitable.

[3]The caption and identification of parties in the Amended Complaint suggests that the members of the SWAT team are different individuals than the MCSD Defendants.

the Plaintiffs' purported 6th Amendment claim, the Court must find that the Plaintiffs fail to state any cognizable claim arising under that Amendment.

The Plaintiffs 14th Amendment claim is also unclear. In one sense, their claims arising under the terms of the 4th Amendment implicitly invoke the 14th Amendment, as it is the 14th Amendment that incorporates the protections of the 4th Amendment to matters involving state, rather than federal, actors. *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1240 (10th Cir. 2003). Beyond that, it is not clear how the Plaintiffs allege that the conduct described here violated any organic provision of the 14th Amendment. To the extent they purport to allege a standalone 14th Amendment claim against the MCSD Defendants on the facts alleged herein, they have failed to articulate a cognizable claim.

Accordingly, the MCSD Defendants' Motion to Dismiss **(# 39)** is **GRANTED**. The claims against Defendants Warner, Abeyta, and Pace are **DISMISSED** for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and the caption of the case is **AMENDED** to omit reference to these Defendants. The MCSD Defendants' Motion to Refer **(# 47)** is **DENIED AS MOOT**.

Dated this 9th day of February, 2009

BY THE COURT:

_____

Marcia S. Krieger
United States District Judge

9